IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 16, 2016

**HEATHER MCMURRY v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Knox County**
**No. 104823          Steven W. Sword, Judge**

_____

**No. E2016-00158-CCA-R3-PC – Filed December 12, 2016**

_____

The Petitioner, Heather McMurry, appeals the post-conviction court's denial of her petition for post-conviction relief from her convictions of numerous drug offenses within 1,000 feet of a school zone and resulting effective twelve-year sentence with a mandatory eight years to be served in confinement. On appeal, the Petitioner contends that she received the ineffective assistance of trial counsel. Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

J. Liddell Kirk, Knoxville, Tennessee, for the appellant, Heather McMurry.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Senior Counsel; Charme P. Allen, District Attorney General; and Philip H. Morton, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

According to this court's opinion from the Petitioner's direct appeal of her convictions,

> [i]n July 2010, a confidential informant working for the
> Knoxville Police Department made three controlled drug buys

of crack cocaine from the defendant at her Knoxville apartment. The defendant was arrested and her apartment searched, which resulted in the discovery of a small amount of crack cocaine and some drug paraphernalia. The Knox County Grand Jury subsequently returned a nine-count indictment charging the defendant with three counts each of the sale and delivery of less than .5 grams of cocaine within 1000 feet of a school zone, [two counts of] possession of less than .5 grams of cocaine with the intent to sell and deliver within 1000 feet of a school zone, and [one count of] possession of drug paraphernalia. The defendant pled guilty to the drug paraphernalia charge and proceeded to trial on the remaining counts of the indictment.

State v. Heather McMurray, No. E2012-02637-CCA-R3-CD, 2013 WL 6623747, at *1 (Tenn. Crim. App. at Knoxville, Dec. 16, 2013). In November 2011, the jury convicted the Petitioner of the remaining eight counts, all Class B felonies. After a sentencing hearing, the trial court sentenced her as Range I, standard offender to twelve years for each felony and eleven months, twenty-nine days for possession of drug paraphernalia, a Class A misdemeanor. The court merged each conviction of delivering cocaine into its corresponding conviction of selling cocaine and merged the two convictions of possessing cocaine. The court ordered that the Petitioner serve the sentences concurrently for a total effective sentence of twelve years with a mandatory eight years to be served in confinement due to the fact that the offenses were committed in a school zone. See Tenn. Code Ann. § 39-17-432(d).

Subsequently, the Petitioner filed a petition for post-conviction relief, claiming that she received the ineffective assistance of trial counsel. The post-conviction court appointed counsel, and counsel filed an amended petition, alleging that the Petitioner received the ineffective assistance of counsel because trial counsel failed to communicate a ten-year plea offer to her, failed to obtain discovery in time for adequate trial preparation, and failed to challenge the admissibility of her inculpatory statement to police.

At the evidentiary hearing, the Petitioner testified that trial counsel represented her in general sessions and criminal court. While the Petitioner was in jail, counsel played for her an audio recording of the drug transactions and a video recording of her statement to police. The Petitioner said that she was "extremely intoxicated" from her use of crack cocaine, marijuana, and alcohol when she gave her statement and that "you could actually see it on the video."

The Petitioner testified that she knew trial counsel and the prosecutor "were having some type of problem" with discovery and that her trial had to be continued due to the problem. At that time, the Petitioner still did not know the confidential informant's identity and was unaware of any plea offers. Counsel told the Petitioner that if she went to trial, the jury would convict her of casual exchange. She said that counsel's "reasoning was because each time that the confidential informant came to my home I had to take his money and go to another location to purchase drugs and bring it back to him. The drugs were never on my [person] or in my home." Each drug transaction involved forty-dollars-worth of cocaine. She said that she understood the charges but that she did not remember counsel's telling her the punishments she faced if the jury convicted her as charged. She and counsel also did not discuss the effect of the school zone on her possible punishments, her receiving a ten- or twelve-year sentence, or what it meant to serve 100% of the minimum punishment in the range.

Post-conviction counsel asked if trial counsel discussed the possibility of a plea agreement with the Petitioner, and she said no. Post-conviction counsel then showed the Petitioner a March 30, 2011 letter from Assistant District Attorney General Philip Morton, offering for the Petitioner to plead guilty as a Range II offender to Class C felonies in exchange for an effective ten-year sentence. The offer provided that the Petitioner would have to serve 100% of six years in confinement because the offenses occurred in a school zone. The Petitioner said she did not see the letter until after trial. She stated that if she had known she faced twelve years with a minimum eight years to serve at 100% and that the State had offered ten years with a minimum six years to serve at 100%, she would have accepted the State's offer.

On cross-examination, the forty-eight-year-old Petitioner acknowledged that in 2011, she had been through the criminal justice system "a good number of times," starting when she was nineteen years old. She also acknowledged that she had numerous prior convictions for thefts and forgeries. When she was arrested in this case, a probation violation warrant was filed in a previous case. At the probation revocation hearing, the Petitioner testified that she never sold cocaine. However, the State played the video of the Petitioner's statement to police in this case. The Petitioner admitted in the video to selling cocaine, and the trial court revoked her probation.

The Petitioner testified that she and counsel met several times before trial and that he played audio and video recordings for her. However, she did not receive discovery until months after her trial. The Petitioner never asked counsel to seek a plea bargain because counsel "always did that" in her previous cases. She learned about the State's March 30 offer when she received her file from trial counsel during the post-conviction proceedings. The State showed the Petitioner a September 30, 2011 letter from trial counsel to Knox County District Attorney General Randy Nichols. In the letter, trial

counsel wrote, "I had a meeting with Ms. McMurry to put together the offer you asked me to make." The letter proposed that the Petitioner plead guilty to one Class C felony in exchange for a six-year sentence to be served as one year in confinement followed by completion of a long-term inpatient drug treatment program. The Petitioner said she had never seen the letter.

The Petitioner testified that counsel did not guarantee the jury would convict her of casual exchange. She said she had "wanted to go to trial" and "wanted to see what was going to happen." She also stated that she had wanted the State to turn over discovery in her case and that "I wanted for you two to not have pissing matches with my life hanging in the middle."[1] She said she had to go to trial but then acknowledged she went to trial because she was not guilty. On redirect examination, the Petitioner testified that she did not know of any option other than going to trial.

Trial counsel testified that at the time of the Petitioner's trial in November 2011, he had represented her in other cases "for a long time." Counsel said that he filed a motion for discovery in this case on September 30, 2010, and that "[w]e had many hearings in front of Judge [Jon Kerry] Blackwood trying to get that discovery." On March 30, 2011, trial counsel received a letter from General Morton, making the ten-year plea offer with April 12 as the deadline to accept the offer. However, counsel did not have discovery on March 30. He and the Petitioner discussed the State's letter, but counsel could not advise the Petitioner as to whether the State was making a reasonable offer without discovery. He said he would have told her they could not make a decision about the offer. The State's March 30 offer "was still a school zone offer," and counsel told the Petitioner that "you're either looking at six years or eight years at a hundred percent." He said the Petitioner "wasn't really interested in the six-year offer, and that's why in the end we went to trial, but again, at the time I was talking to her about . . . this offer, I didn't have discovery." Counsel said that on March 31, 2011, he "sent a letter back to Mr. Morton telling him that what I really needed was discovery." Counsel finally received discovery in the fall of 2011, but any plea offers were "withdrawn about the same time we got discovery, if not beforehand."

Trial counsel testified that he and the Petitioner discussed what a drug-free school zone meant and discussed her potential punishments several times. The Petitioner "was not at all interested in our conversations about accepting a plea that required her to serve a hundred percent of 10 years or 12 years or 15 years or whatever it is she would have been looking at" due to the possibility of consecutive sentencing. He said they "certainly talked about what the possible sentences would be on the drug-free school zone cases."

---

[1] General Morton also represented the State at the post-conviction hearing and cross-examined the Petitioner and trial counsel.

Trial counsel testified that General Morton would not let him have discovery until he met with General Morton. Counsel stated, "I do not meet with Mr. Morton. He threatened me with physical violence once, and that's as close as I get to meeting with Mr. Morton under those circumstances." In the summer of 2011, the trial court ordered that the State bring its file to court in order for counsel to inspect it. General Morton brought the file but would not allow counsel to copy anything from it. Counsel said he "got up and left, because it wasn't doing [him] any good to sit here and look at a file if [he] couldn't copy anything." Subsequently, Judge Blackwood suggested that counsel and General Morton "go to Borders books and have a nice chocolate chip cookie and some coffee." Counsel said, "I explained to Judge Blackwood I really wasn't looking for chocolate chip cookies. I was still looking for discovery." Judge Blackwood was upset that counsel and the State had not resolved the discovery issue, so Judge Blackwood "stopped court and took us into chambers and began reading through the file." However, defense counsel still did not receive discovery until sometime after September 2011 when the State gave him copies of the audio recordings of the drug transactions and the video recording of the Petitioner's statement to police.

Trial counsel testified that he played the recordings for the Petitioner. After watching the recording of the Petitioner's statement to police, counsel did not see any reason to try to exclude the video based upon her intoxication. He also did not remember her telling him that she had used crack cocaine, marijuana, or alcohol prior to giving her statement. He said that the defense in this case was that the Petitioner "was just sharing drugs in order to get her own" and that she was guilty of casual exchange. The jury could have convicted the Petitioner of casual exchange even though she exchanged drugs for money.

On cross-examination by General Morton, trial counsel acknowledged that the Petitioner could have been a career offender based on her prior felony convictions. He also acknowledged that he would have advised her about her possible punishments for the school zone "early on." The trial court held a hearing to revoke the Petitioner's probation in a prior case on August 16, 2010. During the hearing, the State played a portion of the Petitioner's statement to police from this case. Moreover, in a December 21, 2010 letter from Assistant District Attorney General Jennifer Welch, who was handling the Petitioner's case at the time, the State offered "open-file" discovery. Counsel said, though, that open-file discovery was not helpful unless the State allowed him to copy it. At some point, the case was reassigned to General Morton. On March 30, 2011, General Morton made the ten-year plea offer. Counsel said it would have been unethical to allow the Petitioner to accept the offer without discovery. On March 31, 2011, General Morton sent a letter to counsel offering "'open file' inspection, not copying." Counsel ultimately received discovery a couple of months before trial, but the State did not provide discovery prior to the expiration of the State's ten-year plea offer.

Trial counsel testified that General Morton did not act ethically in providing discovery to the Petitioner. On September 30, 2011, counsel wrote a letter to District Attorney General Nichols, General Morton's "boss," offering for the Petitioner to plead guilty to one Class C felony in exchange for a six-year sentence. General Nichols did not accept the Petitioner's offer but responded by letter on October 4, 2011, saying, "I remain uncertain if Judge Blackwood will entertain a plea agreement at this late date, but in the event he will, I am available." Counsel never asked if Judge Blackwood would accept a late plea agreement. In any event, on October 13, 2011, Judge Blackwood sent a letter to General Nichols and trial counsel, advising them that he would accept a plea agreement if notified by October 26. However, counsel made no further attempts to negotiate a plea with the State. Counsel said that the Petitioner "would have rather had gotten something resolved" instead of going to trial but that she "wasn't interested in the six at a hundred."

In a written order, the post-conviction court denied the petition for post-conviction relief. As to the Petitioner's claim that trial counsel failed to tell her about the State's ten-year plea offer, the post-conviction court accredited counsel's testimony that he communicated the offer to her and that she was not interested. The court noted that although counsel advised the Petitioner not to accept the State's offer without discovery, and "rightfully so," that did not mean he did not tell her about the offer. The court found the Petitioner not credible when she said she would have accepted the offer of a six-year sentence to be served at 100% if counsel had relayed it to her, noting that she testified, "'I wanted to go to trial. I wanted to see what would happen.'"

As to the Petitioner's claim that counsel was ineffective for failing to challenge the admissibility of her statement to police, the post-conviction court again accredited counsel's testimony that nothing in the video caused him to question the voluntariness of her statement. Finally, as to the Petitioner's claim that counsel failed to obtain discovery in time for adequate trial preparation, the post-conviction court stated that there was a "dispute over the discovery process" and that trial counsel and the State "did not work well with one another." Nevertheless, the court found that counsel "was vigorously seeking complete discovery" and that the trial court granted continuances to ensure counsel obtained discovery and was prepared for trial. Thus, the court rejected the Petitioner's claim for post-conviction relief.

## II. Analysis

On appeal, the Petitioner challenges only the post-conviction court's conclusion that "the Petitioner would not have accepted any plea agreement which included a drug-free school zone sentence, even the agreement specifically offered in March 2011." She contends that the court's conclusion "is not a conclusion of a provable fact but rather

conjecture." She also contends that while counsel may have communicated the ten-year March 2011 offer to her, counsel stated that he did not seriously evaluate and discuss the offer with her because they did not have discovery. The State argues that the post-conviction court properly determined that the Petitioner did not receive the ineffective assistance of counsel. We agree with the State.

To be successful in a claim for post-conviction relief, a petitioner must prove the factual allegations contained in the post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields, 40 S.W.3d at 458. However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Generally, [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component. Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697).

Turning to the instant case, the post-conviction court accredited trial counsel's testimony that he communicated the State's ten-year March 2011 offer to the Petitioner. Although counsel testified that he could not advise the Petitioner to accept the offer without discovery, he stated that the Petitioner was not interested in accepting an offer that involved school-zone sentencing because it required that she serve the minimum sentence in the range at 100%. The Petitioner testified that she would have accepted the ten-year offer with six years to serve at 100% if counsel had told her about it, but the post-conviction court specifically discredited her testimony.

We note that the evidentiary hearing transcript reflects an acrimonious relationship between trial counsel and General Morton that existed before trial and extended into the post-conviction proceedings. Moreover, counsel's testimony at the evidentiary hearing demonstrates that their relationship affected counsel's willingness to negotiate a plea with General Morton after the March 2011 offer expired. However, counsel did make a plea offer to General Nichols. Although General Nichols did not accept counsel's offer, he indicated a willingness to continue negotiations. Moreover, the trial court notified General Nichols and counsel that it would consider a late settlement. Thus, we are perplexed that no further attempts were made to negotiate a plea. In any event, even if counsel was deficient in failing to pursue additional plea negotiations with the State, the Petitioner has failed to show that she was prejudiced by the deficiency. Counsel testified that the Petitioner was not interested in a plea offer that involved school-zone sentencing, and the post-conviction court accredited his testimony. The State's only offer to the Petitioner involved a ten-year sentence with a minimum six years to serve due to the offenses occurring in a school zone, and nothing indicates the State would have agreed to any offer that did not involve school-zone sentencing. Thus, we conclude that the Petitioner has failed to show that she received the ineffective assistance of counsel.

### III.  Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

_____
NORMA MCGEE OGLE, JUDGE

- 8 -